**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY, a Wisconsin Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TALERICO MARTIN CORPORATION, an Illinois corporation, d/b/a TALERICO MARTIN RETAIL BAKERY and SOCORRO ALVAREZ LEON, | ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Acuity, a Mutual Insurance Company ("Acuity"), a Wisconsin corporation, by Amundsen Davis, LLC, pursuant to 28 U.S.C. §§ 2201 and 2202, for its Complaint for Declaratory Judgment against Defendants, Talerico Martin Corporation, an Illinois corporation, d/b/a Talerico Martin Retail Bakery ("Talerico"), and Socorro Alvarez Leon ("Mr. Leon"), states as follows:

### I.     JURISDICTION

1.     The jurisdiction of the Court is premised upon 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

### II.     VENUE

2.     Venue is premised upon 28 U.S.C. § 1391 in that each Defendant is a resident of this District as defined by 28 U.S.C. § 1391(c) and a substantial part of the events or omissions giving rise to this suit occurred in this District.

### III.    THE PARTIES

3.    At all times relevant herein, Acuity was a Wisconsin corporation, with its principal place of business in Sheboygan, Wisconsin and was authorized to issue policies of insurance in the State of Illinois. Acuity issued certain policies of commercial insurance to Talerico as detailed herein.

4.    At all times relevant hereto, Talerico was an Illinois corporation, with its principal place of business in Summit, Illinois.

5.    At all times relevant hereto, Mr. Leon was a citizen of the State of Illinois.

6.    Mr. Leon is the plaintiff in the Complaint ("*Alvarez Leon* Complaint") described herein and has named Talerico as the defendant therein. Mr. Leon is named as a necessary party to this action to adjudicate insurance coverage under the Acuity policies. In the event that Mr. Leon stipulates to be bound to this Court's judgment, Acuity will move to dismiss him from this action.

### IV.    THE *ALVAREZ LEON* SUIT AND COMPLAINT

7.    On January 26, 2024, Mr. Leon, individually and on behalf of all other similarly situated persons (collectively "Plaintiff"), filed suit against Talerico in the Circuit Court of Cook County, Illinois, No. 2024 CH 00527 ("*Alvarez Leon* suit"), alleging violations of the Illinois Biometric Information Privacy Act ("BIPA"). A copy of Mr. Leon's complaint ("*Alvarez Leon* Complaint") is attached hereto as **Exhibit A**.

8.    The *Alvarez Leon* Complaint alleges that, within five years of its filing, Mr. Leon was employed or staffed by Talerico.

9.    The "Common Facts" section of the *Alvarez Leon* Complaint alleges that Talerico used biometric scanning technology to monitor and track its employees' "clock-in" and "clock-

2

out" time. (**Ex. A**, ¶¶ 17-19)

10.    The *Alvarez Leon* Complaint alleges that Talerico captured, collected, stored, and used its employees' biometric information and disclosed same to third parties, including vendors for timekeeping, data storage and payroll purposes, without complying with BIPA. (*Id.*, ¶¶ 21-24)

11.    The *Alvarez Leon* Complaint alleges that Talerico violated BIPA by failing to properly inform its employees in writing about its collection, use, storage and/or dissemination of their biometric data, by lacking a proper retention policy and by failing to obtain its employees' written consent to its use of their biometric data. (*Id.*, ¶¶ 25-30)

12.    The "Class Allegations" section of the *Alvarez Leon* Complaint alleges that Mr. Leon brings the action on behalf of himself and similarly situated individuals pursuant to 735 ILCS 5/2-801. (*Id.*, ¶ 35) It further alleges that Talerico profited from the biometric data it collected, in violation of BIPA, and knew or was reckless in not knowing that the biometric systems it was using, selling, maintaining and/or servicing were subject to BIPA. (*Id.*, ¶¶ 48- 49)

13.    Count I of the *Alvarez Leon* Complaint alleges a violation of Section 15(a) of BIPA based on Talerico's failure to develop a proper retention policy in connection with its possession of its employees' biometric data. (*Id.*, ¶¶ 59-62)

14.    Count II of the *Alvarez Leon* Complaint alleges a violation of Section 15(b) of BIPA based on Talerico's failure to obtain informed consent from Mr. Leon and Class Members to collect their biometric data. (*Id.*, ¶¶ 64-68)

15.    Count III of the *Alvarez Leon* Complaint alleges a violation of Section 15(d) of BIPA for Talerico's unauthorized dissemination of its employees' biometric data to third parties, including Talerico's payroll processors. (*Id.*, ¶¶ 70-76)

16.    In the prayer for relief of Counts I through III, Plaintiff seeks class certification;

an award of injunctive relief to protect the interests of Mr. Leon and the "Class" of similarly situated individuals; an award of statutory damages ($5,000 for each willful and/or reckless violation of BIPA and $1,000 for each negligent violation of BIPA); and an award attorney's fees and other litigation expenses. (*Id.*, pp. 14, 16-18)

## V. **THE ACUITY POLICIES**

17.     Acuity issued Policy No. Z88610 to Talerico, effective December 13, 2018 to December 12, 2019 and renewed for the periods of December 12, 2019 to December 12, 2020; December 12, 2020 to December 12, 2021; and December 12, 2021 to December 12, 2022, cancelled effective April 4, 2022 and replaced by No. ZM5173, effective April 4, 2022 to April 4, 2023 and renewed for the period of April 4, 2023 to April 4, 2024. The policies and renewals are hereafter referred to collectively as the "Acuity policies."

18.     Each of the Acuity policies included a Commercial General Liability ("CGL") coverage part, subject to limits of liability of $1 million per occurrence, $3 million in the general aggregate, and $1 million for personal and advertising injury (any one person or organization).

19.     Commencing with Policy No. ZM5173, effective April 4, 2022, the Acuity policies also contained a Workers Compensation and Employers Liability ("WC/EL") coverage part.

20.     Each of the Acuity policies also included an Excess Liability coverage part, subject to a limit of liability of $10 million, until December 12, 2021 when the limit was increased to $17 million.

21.     Copies of the Declarations and policy forms comprising the CGL, Excess Liability and WC/EL coverage parts of Acuity policy ZM5173, as amended effective October 16, 2023, are attached hereto as **Exhibit B** and incorporated herein. The terms, conditions, and exclusions of each of the coverage parts during each period of the Acuity policies relevant to this

action are the same as those set forth below unless otherwise stated.

**A.  The CGL Coverage Part**

22.      The Insuring Agreement of Coverage A–Bodily Injury and Property Damage

Liability of the CGL coverage part provides as follows:

**a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury* or *property damage* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury* or *property damage* to which this insurance does not apply.
* * *

**b.**      This insurance applies to *bodily injury* and *property damage* only if:

(1)      The *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the coverage territory; and

(2)      The *bodily injury* or *property damage* occurs during the policy period; and

(3)      Prior to the policy period, no insured listed under paragraph 1 of Section II – Who is An Insured and no *employee* authorized by you to give or receive notice of an *occurrence* or claim, know that the *bodily injury* or *property damage* had occurred, in whole or in part. (**Ex. B**, p. POL 6)

23.      The insurance provided by Coverage A is subject to certain Exclusions, providing

in relevant part, that the insurance does not apply to any of the following:

**a.      Expected or Intended Injury**

*Bodily injury* or *property damage* expected or intended from the standpoint of the insured. (*Id.*, pp. POL 6-7)
* * *

**e.      Employer's Liability**

*Bodily injury* to:

(1)      An *employee* of the insured arising out of and in the course of:

(a)      Employment by the insured; or

(b)      Performing duties related to the conduct of the insured's

5

business;… (*Id.*, p. POL 7)

\* \* \*

**o.** **Personal and Advertising Injury**

*Bodily injury* arising out of *personal and advertising injury*. (*Id.*, p. POL 10)

**q.** **Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability[1]**

Damages arising out of:

(1)    Any access to or <u>disclosure of any person's…confidential or personal information</u>, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information <u>or any other type of nonpublic information</u>; or (Underscore supplied.) (*Id.*, p. POL 27)

\* \* \*

**r.** **Recording And Distribution Of Material Or Information In Violation Of Law[2]**

*Bodily injury* or *property damage* arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1)    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2)    The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3)    The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4)    <u>Any federal, state or local statute</u>, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, <u>that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information</u>. (Underscore supplied.) (*Id.*, p. POL 21)

24.    The Insuring Agreement of Coverage B–Personal and Advertising Injury Liability

---

[1] As amended by endorsement Form CG-2106F(5-14).

[2] As amended by endorsement Form CG-0068F(5-09).

of the CGL coverage part provides as follows:

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of *personal and advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *personal and advertising injury* to which this insurance does not apply. (*Id.*, pp. POL 10-11)

    **b.**    This insurance applies to *personal and advertising injury* caused by an offense arising out of your business, but only if the offense was committed...during the policy period. (*Id.*)

* * *

25.    The insurance provided by Coverage B is subject to certain Exclusions, providing

in relevant part, that the insurance does not apply to any of the following:

    **a.**    **Knowing Violation of Rights of Another**

    *Personal and advertising injury* caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict *personal and advertising injury*. (*Id.*, p. POL 11)

* * *

    **c.**    **Material Published Prior to Policy Period**

    *Personal and advertising injury* arising out of oral or written publication of material whose first publication took place before the beginning of the policy period. (*Id.*)

* * *

    **q.**    **Recording And Distribution Of Material Or Information In Violation Of Law[3]**

    *Personal and advertising injury* arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    (1)    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

    (2)    The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

    (3)    The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

---

[3] As amended by endorsement Form CG-0068F(5-09).

7

(4)    Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information. (Underscore supplied.) (*Id.*, p. POL 21)

**Access Or Disclosure Of Confidential Or Personal Information[4]**

*Personal and advertising injury* arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information. (Underscore supplied.) (*Id.*, p. POL 27)

* * *

26.    The CGL includes the following definitions:

3.    *"Bodily injury"* means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time, and also including mental anguish.[5] (*Id.*, p. POL 17)

* * *

13.    *"Occurrence"* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. (*Id.*, p. POL 19)

14.    *"Personal and advertising injury"* means injury, including consequential *bodily injury* arising out of one or more of the following offenses:

* * *

e.    Oral or written publication, in any manner, of material that violates a person's right of privacy; (*Id.*)

* * *

17.    *"Property damage"* means:

a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured.

---

[4] Added by endorsement Form CG-2106F(5-14).

[5] "Mental anguish" was added to the definition of *bodily injury* by endorsement Form CG-7305 (12-19).

8

All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it. (*Id.*, p. POL 20)

**B. The CGL Cyber Coverage Endorsement**

27.     The CGL coverage part of Acuity policy ZM5173, effective April 4, 2023 to April 4, 2024, was endorsed with a "Cyber Suite Coverage Endorsement," referred to as "Cyber Coverage." The Cyber Coverage is subject to an Annual Aggregate Limit of Liability of $100,000.

28.     The predecessor policy ZM5173, effective April 4, 2022 to April 2, 2023, was also endorsed with an identical "Cyber Suite Coverage Endorsement."

29.     Policy No. Z88610, effective December 13, 2018 to December 12, 2019, and its renewals were endorsed with "Identity Recovery Coverage," "Cyber Liability Coverage" and "Data Breach Coverage" endorsements, true and correct copies of which are attached hereto as **Exhibit C**.

30.     Cyber Coverage, Section A, "Coverage," includes the following:

**1.      Data Compromise Response Expenses**

**a.**     Data Compromise Response Expenses applies only if all of the following conditions are met:

(1)     There has been a *personal data compromise*; and

(2)     Such *personal data compromise* took place in the *coverage territory*; and

(3)     Such *personal data compromise* is first discovered by you during the *policy period*; and

(4)     Such *personal data compromise* is reported to us as soon as practicable, but in no event more than 60 days after the date it is first discovered by you. (**Ex. B**, p. POL 51)

**b.**     If the conditions listed in **a**. above have been met, then we will provide coverage for the following expenses when they arise

9

directly from such *personal data compromise* and are necessary and reasonable. Items **(4)** and **(5)** below apply only if there has been a notification of the *personal data compromise to affected individuals* as covered under item (3) below. (*Id.*)

\* \* \*

6. **Data Compromise Liability**

 a.   Data Compromise Liability applies only if all of the following conditions are met:

  (1)   During the *policy period* or any applicable Extended Reporting Period, you first receive notice of one of the following:

   (a)   A *claim*; or (*Id.*, p. POL 53)

    \* \* \*

  (2)   Such *claim*...must arise from a *personal data compromise* that:

   (a)   Took place during the *coverage term*; and

   (b)   Took place in the *coverage territory*; and

   (c)   Was submitted to us and insured under Data Compromise Response Expenses. (*Id.*, p. POL 54)

  (3)   Such *claim* is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you. (*Id.*)

 b.   If the conditions listed in **a**. above have been met, then we will pay on your behalf any covered:

  (1)   *Loss* directly arising from the *claim*; or

    \* \* \*

 c.   All *claims*...arising from a single *personal data compromise* or interrelated *personal data compromises* will be deemed to have been made at the time that notice of the first of those *claims*...is received by you. (*Id.*)

    \* \* \*

31.   The Cyber Coverage is subject to Exclusions, providing that Acuity will not pay for costs or loss arising from the following:

 6.   Any fines or penalties other than those explicitly covered under Data Compromise Response Expenses. (*Id.*, p. POL 55)

* * *

**15**.    *Property damage* or *bodily injury* other than mental anguish or mental injury alleged in a claim covered under Electronic Media Liability. (*Id.*)

* * *

32.    The Cyber Coverage includes the following Definitions:

**1.**    *"Affected Individual"* means any person whose *personally identifying information* or *personally sensitive information* is <u>lost, stolen, accidentally released or accidentally published by a *personal data compromise* covered under this Cyber Coverage.</u> (Underscore supplied.)*** (*Id.*, p. POL 61)

* * *

**6**.    *"Claim"*

   **a.**    Claim means:

      (1)    A written demand for monetary damages or non-monetary relief, including injunctive relief;

      (2)    A civil proceeding commenced by the filing of a complaint; (*Id.*)

* * *

   arising from a *wrongful act* or a series of interrelated *wrongful acts* including any resulting appeal. (*Id.*, p. POL 62)

* * *

   **c**.    *Claim* includes a demand or proceeding arising from a *wrongful act* that is a *personal data compromise* only when the *personal data compromise* giving rise to the proceeding was covered under Data Compromise Response Expenses section of this Cyber Coverage, and you submitted a *claim* to us and provided notifications and services to affected individuals in consultation with us pursuant to Data Compromise Response Expenses in connection with such *personal data compromise*. (*Id.*)

* * *

**29**.    *"Loss"*

   **a.**    With respect to Data Compromise Response Expenses, *loss* means those expenses enumerated in Data Compromise Response Expenses, paragraph **b.** (*Id.*, p. POL 66)

* * *

   **f.**    With respect to Data Compromise Liability…*loss* means *defense costs* and *settlement costs*. (*Id.*)

* * *

**34**.    *"Personal Data Compromise"* means the loss, theft, accidental release or accidental publication of *personally identifying information* or *personally sensitive information* as respects one or more *affected individuals*[.] If the loss, theft, accidental release or accidental publication involves *personally*

*identifying information*, such loss, theft, accidental release or accidental publication <u>must result in or have the reasonable possibility of resulting in the fraudulent use of such information</u>. (Underscore supplied). This definition is subject to the following provisions:

    **a.**    At the time of the loss, theft, accidental release or accidental publication, the *personally identifying information* or *personally sensitive information* need not be at the insured premises but must be in the direct care, custody or control of:

        (1)    You; or

        (2)    A professional entity with which you have a direct relationship and to which you (or an *affected individual* at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, processing, transmission or transportation of such information.

    **b.**    *Personal data compromise* includes disposal...of *personally identifying information* or *personally sensitive information* without appropriate safeguards, such as shredding or destruction, provided that the failure to use appropriate safeguards was accidental and not reckless or deliberate.

    **c**.    *Personal data compromise* includes situations where there is a reasonable cause to suspect that such *personally identifying information* or *personally sensitive information* has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

    **d.**    All incidents of *personal data compromise* that are discovered at the same time or arise from the same cause will be considered one personal data compromise. (*Id.*, p. POL 67)

**35**.    "*Personally Identifying Information*"

    **a**.    *Personally identifying information* means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an *affected individual* or *identity recovery insured*. This includes, but is not limited to, Social Security numbers or account numbers. (*Id.*)

36. "*Personally Sensitive Information*"

    a.     *Personally sensitive information* means private information specific to an individual the release of which requires notification of *affected individuals* under any applicable law.

    b.     *Personally sensitive information* does not mean or include *personally identifying information*. (*Id.*)

* * *

45. "*Wrongful Act*"

    a.     With respect to Data Compromise Liability, *wrongful act* means a *personal data compromise*. (*Id.*, p. POL 69)

* * *

## C. The WC/EL Coverage Part

33. Item 3A of the Information Page of the WC/EL coverage part provides in relevant part as follows:

    **3. A. WORKERS COMPENSATION INSURANCE:** Part One of the policy applies to the Workers Compensation Law of the state(s) listed here:

    Illinois (*Id.*, p. POL 103)

34. The General Section of the WC/EL coverage part provides in relevant part as follows:

    **C.     Workers Compensation Law**

    Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page…. (*Id.*, p. POL 108)

* * *

35. Part One of the WC/EL coverage part, "Workers Compensation Insurance," provides in relevant part as follows:

    **A.     How This Insurance Applies**

    This workers compensation insurance applies to bodily injury by accident or bodily injury by disease….

13

**B.      We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

**C.      We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance....

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. (*Id.*)

\* \* \*

36.      Part Two of the WC/EL coverage part, "Employers Liability Insurance," provides

in relevant part as follows:

**A.      How This Insurance Applies**

This employer's liability insurance applies to bodily injury by accident or bodily injury by disease….

**1.**      The bodily injury must arise out of and in the course of the injured employee's employment by you.

**2.**      The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

**3.**      Bodily injury…must occur during the policy period. (*Id.*, p. POL 109)

\* \* \*

**B.      We Will Pay**

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance. (*Id.*)

**C.      Exclusions**

This insurance does not cover:

\* \* \*

**11**.  Fines or penalties imposed for violation of federal or state law. (*Id.*, pp. POL 109-10)

\* \* \*

14

**D.      We Will Defend**

We will have the right and duty to defend….any claim, proceeding or suit against you for damages payable by this insurance…. (*Id.*, p. POL 110)

We have no duty to defend any claim, proceeding or suit that is not covered by this insurance… (*Id.*)

* * *

## D.   <u>The Excess Liability Coverage Part</u>

37.     The CGL coverage part and the Employers Liability coverage of the WC/EL coverage part are listed on the Schedule of Underlying Insurance of the Excess Liability coverage part. (*Id.*, p. POL 75)

38.     The Insuring Agreement of the Excess Liability coverage part provides:

**a.**      We will pay those sums, in excess of the amount payable under the terms of any *underlying insurance*, that the insured becomes legally obligated to pay as damages because of *injury* or damage to which this insurance applies, provided that the *underlying insurance* also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.

* * *

**d.**      This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the underlying insurance, except:

(2)      With respect to any provisions to the contrary contained in this insurance. (*Id.*, p. POL 78)

* * *

39.     The "Exclusions" section of the Excess Liability coverage part provides that the "exclusions that apply to the *underlying insurance* apply to this insurance." (*Id.*)

40.     Section III–Conditions of the Excess Liability coverage part includes the following:

* * *

**5.      Other Insurance**

This insurance is excess over any other valid and collectible insurance whether primary, excess, contingent or any other basis, except other insurance written specifically to be excess over this insurance. (*Id.*, pp. POL 81-82)

15

6. **Policy Period**

This insurance will respond to *injury* or damage that occurs, or arises from an offense committed, during the policy period…shown in the Declarations.*** (*Id.*, p. POL 82)

* * *

41. Section IV–Definitions of the Excess Liability coverage part includes the following:

* * *

3. "*Injury*" means bodily injury, property damage, personal injury or advertising injury as defined in the *underlying insurance*.

4. "*Occurrence*" means:

a. With respect to bodily injury to persons other than your employees and property damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

b. With respect to bodily injury to your employees arising out of and in the course of their employment by you, the accident or disease which causes the bodily injury; and

c. With respect to offenses committed by the insured resulting in personal injury or advertising injury, all such injury sustained by any one person or organization. (*Id.*)

7. "*Underlying insurance*" means the liability insurance coverage provided under policies shown in the Schedule of Underlying Insurance in the Declarations, for the limits and periods indicated. (*Id.*, p. POL 83)

42. The Excess Liability Coverage Part is endorsed with a "Cyber Suite Exclusion" endorsement that provides that the insurance provided does not apply to damages covered under the Cyber Suite Coverage endorsement of the CGL coverage part. (*Id.*, p. POL 98)

## VI.  BASIS FOR RELIEF

43. Talerico first discovered the *Alvarez Leon* Complaint and/or that a claim was being made against it based on the events alleged therein during the effective period of Policy No. ZM 5173, April 4, 2023 to April 4, 2024.

16

44. Talerico first reported the *Alvarez Leon* Complaint, and/or that a claim was being made against it based on the events alleged therein, to Acuity on or about February 16, 2024.

45. Talerico asserts that it is entitled to defense and indemnity under the Acuity policies for the claims made against it in the *Alvarez Leon* Complaint

46. Acuity brings this action to secure a declaration of the parties' respective rights and duties under the Acuity policies.

47. Acuity owes no duty to defend or duty to indemnify Talerico under the Acuity policies with respect to the claims made against it in the *Alvarez Leon* Complaint or the events alleged therein for one or more of the following reasons, which are pleaded in the alternative and without prejudice to one another:

    a.    The *Alvarez Leon* Complaint does not allege that Plaintiff sustained *bodily injury* or *property damage*, as those terms are defined in the CGL coverage part, and therefore the claims made against Talerico in the *Alvarez Leon* Complaint do not fall within Coverage A of the CGL coverage part;

    b.    The *Alvarez Leon* Complaint does not allege an *occurrence*, as that term is defined in the CGL coverage part, and therefore the claims made against Talerico in the *Alvarez Leon* Complaint do not fall within the Coverage A Insuring Agreement of the CGL coverage part;

    c.    The "Expected or Intended Injury" exclusion of Coverage A of the CGL coverage part would apply to bar coverage for *bodily injury* or *property damage*, if coverage was otherwise present, for the claims made against Talerico in the *Alvarez Leon* Complaint;

    d.    The "Employer's Liability" exclusion of Coverage A of the CGL coverage part would apply to bar coverage for *bodily injury*, if coverage was otherwise present, for the claims made against Talerico in the *Alvarez Leon* Complaint;

    e.    To the extent, if any, that the *Alvarez Leon* Complaint alleges *personal and advertising injury*, the "Knowing Violation of Rights of Another" exclusion of Coverage B would apply to bar coverage

for any and all damages caused by Talerico's knowing violations of BIPA, if any;

f.     To the extent, if any, that the *Alvarez Leon* Complaint alleges *personal and advertising injury*, the "Material Published Prior to Policy Period" exclusion of Coverage B would apply to bar coverage for any and all damages caused by Talerico's publication of Plaintiff's Biometric Information to third parties, except with respect to the period of the Acuity policies during which such publication first took place;

g.     To the extent the *Alvarez Leon* Complaint alleges *bodily injury*, *property damage*, or *personal and advertising injury*, the "Recording and Distribution Of Material Or Information In Violation Of Law" exclusions of Coverages A and B would apply to bar coverage for any and all such allegations;

h.     To the extent the *Alvarez Leon* Complaint alleges *bodily injury*, *property damage*, or *personal and advertising injury*, the "Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability" exclusions of Coverages A and B would apply to bar coverage for any and all such allegations;

i.     The *Alvarez Leon* Complaint does not allege a *personal data compromise* and, therefore, does not trigger either the Data Compromise Response Expenses coverage or the Data Compromise Liability coverage of the Cyber Coverage of Policy No. ZM5173, effective April 4, 2023 to April 4, 2024 Acuity , nor do its allegations trigger any of the other Cyber Coverages in effect during said policy period;

j.     To the extent, if any, that the *Alvarez Leon* Complaint is deemed to allege a *personal data compromise,* the exclusion of coverage for fines and penalties would apply to bar any coverage that would otherwise be available;

k.     No coverage is available to Talerico under the "Cyber Suite Coverage Endorsement" of the Acuity policy in effect from April 4, 2022 to April 4, 2023 because no claim was discovered by Talerico during the effective period of that policy, nor did Talerico report any claim to Acuity during the policy period or within 60 days of expiration of the policy period.

l.     No coverage is available to Talerico under the "Identity Recovery Coverage," "Cyber Liability Coverage" and "Data Breach Coverage" endorsements of the Acuity policies numbered Z88610

18

because no claim was discovered by Talerico during the effective period of those policies, nor did Talerico report any claim to Acuity during any of the policy periods or within 60 days of the cancellation of the last such policy, April 4, 2022;

m. The *Alvarez Leon* Complaint does not seek recovery against Talerico under the Illinois Workers Compensation Act and therefore Part One of the WC/EL coverage part is not triggered and Acuity owes Talerico no duties under it;

n. The *Alvarez Leon* Complaint does not allege that Plaintiff sustained bodily injury by accident in the course of employment by Talerico and therefore Part Two of the WC/EL coverage part is not triggered and Acuity owes Talerico no duties under it;

o. To the extent, if any, the *Alvarez Leon* Complaint alleges Plaintiff sustained bodily injury by accident in the course of employment with Talerico, the exclusion of coverage under Part Two of the WC/EL coverage part for fines or penalties imposed by state law applies to bar coverage for such bodily injury;

p. The CGL coverage part and Part Two, Employers Liability Coverage, of the WC/EL coverage part are *underlying insurance* to the Excess Liability coverage part, which provides that "[t]his insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the *underlying insurance*," and that "the exclusions that apply to the *underlying insurance* apply to this insurance." Accordingly, for the same reasons Acuity owes no duties to Talerico under the CGL coverage part and/or the Employers Liability Coverage of the WC/EL coverage part, it owes no duties to Talerico under the Excess Liability coverage;

q. The Excess Liability coverage part expressly excludes coverage for any claim covered by the Cyber Suite Coverage endorsement of the CGL coverage part.

48. Acuity's investigation into this matter is ongoing and Acuity reserves its right to expand on the defenses set forth herein and to raise additional defenses to coverage to the full extent warranted by the facts and the law.

49. An actual and justiciable controversy exists between the parties hereto concerning coverage, if any, provided by Acuity. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court is

granted the power to determine and adjudicate the rights and obligations of the parties hereto.

## VII.  PRAYER FOR RELIEF

Wherefore, for the reasons set forth hereinabove, Acuity prays that the Court enter a judgment in its favor, finding and declaring that it owes no duty to defend or indemnify Talerico with respect to the claims made in the *Alvarez Leon* Complaint and/or the events and damages alleged therein, that neither Mr. Leon nor any class member is entitled to any right, title or interest in the Acuity policies as a judgment creditor of Talerico, grant Acuity such other and further relief as the Court deems just and equitable, and award Acuity its costs incurred herein.

ACUITY, A MUTUAL INSURANCE COMPANY

By:   /s/ Richard T. Valentino
One of Its Attorneys

Richard T. Valentino
Amundsen Davis LLC
150 North Michigan Avenue, Suite 3300
Chicago, Illinois 60601
T: (312) 894-3392
rvalentino@amundsendavislaw.com